IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

V.

MAKALA RAGLIN AND
BASHON COLLINS,

DEFENDANTS

Criminal Action No.
1:25-cr-00315-MLB-CCB

**Defendants Makala Raglin and Bashon Collins's Joint Response to Query from Court Regarding Motion to Dismiss the Indictment for Pre-Indictment Delay**

The government indicted this case on the last possible day, five years after learning of the alleged offenses by the defendants. Because of the significant delay that caused actual prejudice and was the result of an intentional delay by the government, defendants Makala Raglin and Bashon Collins filed a motion to dismiss the indictment for pre-indictment delay. Docs. 43, 56 (as amended). The Court scheduled an evidentiary hearing on that motion (and several others) for April 30. Shortly before that scheduled hearing, the government asked, via an after-hours email on April 17 to the Courtroom Deputy, that the Court cancel the portion of the hearing related to the pre-indictment delay and instead allow it to respond via briefing to the defendants' motion.

1

The Court held a telephonic conference on April 22. During that conference the Court agreed to continue the hearing and requested that the parties address three questions:

1 - Whether the defendants met the standard to warrant an evidentiary hearing on their motion to dismiss?

2 - Does the prejudice under the first prong have to relate to the tactical advantage in the second prong?

3 - Does the second prong of the test analyze the tactical advantage as objective or subjective?

A review of the defendants' motion and the case law demonstrates that the answers to these questions should result in the Court holding an evidentiary hearing and ultimately granting the motion.

## I.    The defendants' motion meets the standard and the Court should hold an evidentiary hearing.

The Eleventh Circuit requires that a defendant "set forth . . . specific allegations in support of [the motion to dismiss for pre-indictment delay]" in order to warrant an evidentiary hearing. *United States v. Farias*, 836 F.3d 1315, 1325 (11th Cir. 2016); *see also United States v. Lindstrom*, 698 F.2d 1154, 1158-59 (11th Cir. 1983) (defendant must merely suggest what tactical advantage the government could have gained from the delay to warrant further inquiry); *United States v. Randolph*, No. 4:11-CR-17-RLV-WEJ, 2011

2

WL 5921455, at *5 (N.D. Ga. Nov. 2, 2011), *report and recommendation adopted*, No. 4:11-CR-17, 2011 WL 5925588 (N.D. Ga. Nov. 21, 2011) (denying evidentiary hearing because defendant failed to allege any facts that would support a finding either that he was prejudiced or that the government sought a tactical advantage by delaying his indictment). In *Farias*, the defendant made a "vague allegation, stated at the highest order of abstraction," with respect to prejudice and "he made absolutely no showing that the pre-indictment delay was the product of deliberate design by the government to gain a tactical advantage over him." 836 F.3d at 1325. Not surprisingly, this was insufficient to warrant a hearing.

The defendants here have gone beyond this. They have set out specific facts demonstrating prejudice and the tactical advantage the government sought to obtain through the delay, while including multiple exhibits to support those claims. Doc. 43 at 2-6 and Exs. 1-9. The motion identified the prejudice the delay has caused the defendants, including death of multiple witnesses as well as loss of IP data and ATM videos. It also described the tactical advantage the government gained, which resulted in defendant Collins providing a statement to the federal agents (and an attempt to elicit a statement from defendant Raglin). The information presented by the defendants in their motion meets the standard set out in *Farias* and the Court should hold an evidentiary hearing.

**II.    The prejudice resulting from pre-indictment delay need not be the tactical advantage sought by the government.**

This Court also asked the parties to address whether the two prongs of the test for unconstitutional pre-indictment delay must relate to one another. Specifically, must the prejudice that the defendant suffered (prong one) be the tactical advantage the government sought to obtain (prong two) when it acted in a way that delayed indictment? The Eleventh Circuit definitively answered "no" in *United States v. Foxman*, 87 F.3d 1220 (11th Cir. 1996).

In a footnote, *Foxman* analyzed the use of the term "bad faith" in prior Eleventh Circuit decisions discussing pre-indictment delay. The court reasoned that, "[i]n context . . . those cases used the words 'bad faith' to mean that the government acted to delay an indictment, hoping that the delay—in and of itself—would prejudice the defense." *Id.* at 1223 n.2. But, it went on, "bad faith in this sense . . . is not critical to a due process violation." *Id.* Instead, "[t]he critical element is that the government makes a judgment about how it can best proceed with litigation to gain an advantage over the defendant and, as a result of that judgment, an indictment is delayed." *Id.* The court observed that "[t]he government, as litigating party, might pursue tactical advantages *other than prejudice directly caused by the delay*," and that "intentional government acts designed to obtain a tactical advantage which only *incidentally* cause delay have never been ruled out as a potential

4

basis for due process violations." *Id.* (first emphasis added). Rather, "The main point is showing acts done intentionally in pursuit of a particular tactical advantage: delay (and the prejudice directly caused by the delay) need not necessarily be the tactical advantage sought." *Id.*

Subsequent Eleventh Circuit cases cite *Foxman* to support that the two prongs are distinct and the prejudice a defendant suffers from the delay need not be the tactical advantage the government sought in causing the delay. In *United States v. Ramirez*, the court described the second prong—tactical advantage—as requiring the defendant to "establish *either* that the government acted in 'bad faith' by intentionally delaying the prosecution to cause Ramirez prejudice *or* that 'the government ma[de] a judgment about how it [could] proceed with litigation to gain an advantage over the defendant and, as a result of that judgment, [the] indictment [was] delayed.'" *United States v. Ramirez*, 491 F. App'x 65, 70 (11th Cir. 2012) (emphases added) (quoting *Foxman*). Similarly, the court in *United States v. Gayden* described that "Gayden correctly noted that he is not obligated to prove bad faith on the government's part," and quoted the crux of the *Foxman* footnote's analysis: "'[t]he critical element is that the government makes a judgment about how it can best proceed with litigation to gain an advantage over the defendant and, as a result of that judgment, an indictment is delayed.'" *United States v. Gayden*, 977 F.3d 1146, 1150 (11th Cir. 2020) (quoting *Foxman*).

5

*Foxman* and later cases make clear that a defendant need not show a link between the prejudice he suffered from pre-indictment delay (prong one) and the tactical advantage sought by the government (prong two): "[D]elay (and the prejudice directly caused by the delay) need not necessarily be the tactical advantage sought." *Foxman*, 87 F.3d at 1223 n.2.

### III.   The tactical advantage identified by the defendants meets the second prong of the analysis.

The defendants have put forward evidence that the delay in indictment was brought about by the investigative agents' desire to interview defendants. Both defendants were represented by counsel with respect to the state arrests stemming from their arrests and have argued that the government delayed its indictment until the statute of limitations for those charges had lapsed (after four years). The government responded that the representation did not foreclose the ability of federal agents to interview the defendants, citing *United States v. Burgest* for the proposition that representation at the state level does not mean that a defendant is represented in a federal matter for Sixth Amendment purposes. 519 F.3d 1307 (11th Cir. 2008).

The Court then raised the question of how the second prong is evaluated. Specifically, can the second prong be established if there was no actual tactical advantage to be gained? That is, in this case, can the defendants win

6

their motion even if the federal agents could have interrogated the defendants while they were still represented in their state case even if the agents did not realize this? Or put differently, could the second prong still be met if the government subjectively believed it was going to obtain a tactical advantage but was operating under a mistake of law, in that interrogating the defendants about federal charges while they were represented in the state would not have been improper?

While defendants have not found a case directly addressing this question, the cases all focus on what the government actually did that caused the delay, without delving deeper into whether the action was necessary or would have an actual impact. In *Foxman*, the Eleventh Circuit stated that "bad faith in this sense or in the sense of a subjective sinister motive is not critical to a due process violation for preindictment delay. The critical element is that the government makes a judgment about how it can best proceed with litigation to gain an advantage over the defendant and, as a result of that judgment, an indictment is delayed." 87 F.3d 1220, 1223 n.2 (11th Cir. 1996).

In that case, Foxman (the defendant) and Jacoby (an alleged co-conspirator and witness) were both officers in a law firm and both committed financial crimes through the firm. *Foxman*, 87 F.3d at 1221. Jacoby was tried and convicted, then the government immunized him to have him testify in the grand jury against Foxman and, the government anticipated, also at

Foxman's trial. *Id.* But the district court granted Foxman's motion to dismiss that argued the government intentionally delayed indicting Foxman until Jacoby's convictions became final in hoping that would make Jacoby a better witness for the government. The Eleventh Circuit reversed because the record was not sufficiently developed on whether this was truly the government's aim, but it suggested such a record could be made, even before Jacoby testified (suggesting the government's motivation is the primary concern, not whether the government actually achieved a tactical advantage, *i.e.*, more persuasive testimony) and notwithstanding its own doubts about whether Jacoby actually would have been a persuasive witness for the government (again suggesting that the motivation—subjective—rather than the outcome—objective—is what matters). *Foxman*, 87 F.3d at 1223-24.

Thus, the inquiry is not whether the government's action was necessary to gain the advantage or whether it was a wise judgment, it is merely whether the government did in fact take the action intending to gain the advantage.

Furthermore, the Eleventh Circuit has essentially answered the question as it applies in this case, suggesting that an attempt at interrogation could be an action that provides the sort of tactical advantage contemplated by the test. *See United States v. Hurtado*, 89 F.4th 881, 898 (11th Cir. 2023). In *Hurtado*, the Coast Guard apprehended the defendants in the Caribbean Sea on suspicion of drug trafficking. The defendants were held at sea for several

months before being brought to the United States to face an indictment. Among other challenges, they argued that their rights were violated by the pre-indictment delay. The court rejected this argument solely on the tactical advantage prong. *Hurtado*, 89 F.4th at 897-98. It specifically stated, "Further, Acosta Hurtado and his co-defendants remained uninterrogated the entire time they were on the Coast Guard vessels, so it is unclear what tactical advantage the United States could have possibly obtained over them." *Hurtado*, 89 F.4th at 898. The court does not suggest that any interrogation would have been impermissible, merely that delaying indictment to allow for interrogation could have been a tactical advantage sufficient to meet the test. This makes clear that an attempt to interrogate a defendant standing alone could be a tactical advantage sufficient to meet the second prong of the test.

Finally, to the extent the government relies upon its argument that the agents were not barred under the Sixth Amendment from interviewing the defendants even though they were represented, this is too narrow a view of the constraints on the government with respect to represented parties.[1] We

---

[1] The government's claimed concern regarding the potential testimony of a former AUSA is likewise misplaced. AUSAs testify not infrequently in matters, without incident. Even having the prosecuting AUSA testify (that is, a current AUSA who is prosecuting the case in which he testifies) is not particularly unusual. In *United States v. Lopez-Giraldo*, the lead AUSA in the case testified regarding a post-indictment speedy trial issue without

know that the U.S. Attorney's Office opened its case at least as early as 2023.

At that point, the agents were working at the direction of an attorney and the

Georgia Rules of Professional Responsibility became relevant, Rule 4.2 in

particular (Communication with Person Represented by Counsel).

As the Eleventh Circuit has stated, the "Georgia Bar's no contact rule

'imposes restrictions that go beyond the federal constitutional provisions.'"

*United States v. Beck*, 2023 WL 5016614, *5 (11th Cir. Aug. 7, 2023) (citing

Georgia Rule 4.2).[2] As such, even if the agents could have attempted to

interview the defendants under the Sixth Amendment right to counsel, Rule

4.2 would still impose limits on what actions the government could take and

would have provided a rationale for waiting until the state cases were no

longer viable.

The Department of Justice recognizes the importance of this restriction,

directing "attorneys are strongly encouraged to consult with their

Professional Responsibility Officers or supervisors—and, if appropriate, the

Professional Responsibility Advisory Office—when there is a question

---

detriment to the case or the office. No. 1:17-CR-395-MLB-JKL, 2021 WL 6804068, at *1 (N.D. Ga. Nov. 4, 2021), report and recommendation adopted, No. 1:17-CR-395-MLB, 2021 WL 6072449 (N.D. Ga. Dec. 23, 2021) ("Assistant United States Attorney N[.]J[.], the lead prosecutor on the case since August 2017, testified for the government as its sole witness.").

[2] A violation of Rule 4.2 generally does not result in suppression. *Beck*, 2023 WL 5016614 at*5.

regarding which is the relevant rule or the interpretation or application of the relevant rule." Justice Manual, § 9-13.200 (available at https://www.justice.gov/jm/jm-9-13000-obtaining-evidence#9-13.200). If the agents had attempted to interview the defendants, that could have exposed the AUSA to bar disciplinary proceedings.

## CONCLUSION

For the foregoing reasons, the Court should conduct an evidentiary hearing regarding the defendants' motion to dismiss the indictment.

Respectfully submitted,

/s/CHRISTOPHER J. HUBER
CHRISTOPHER J. HUBER
THE HUBER LAW FIRM LLC
75 14th Street NE, Suite 2250
Atlanta, GA 30309
GA Bar # 545627
chuber@huberlawllc.com
(404) 465-3131

*Attorney for Makala Raglin*

/s/JOE AUSTIN
JOE AUSTIN
FEDERAL DEFENDER PROGRAM, INC.
Suite 1500, Centennial Tower
101 Marietta Street, NW
Atlanta, GA 30303
GA Bar # 176460
joe_austin@fd.org
(404) 688-7530

*Attorney for Bashon Collins*

11